WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Michael S. McDonald,                        )      No. CV-02-1357-PHX-SRB
                                            )
          Plaintiff,                        )      **ORDER**
                                            )
vs.                                         )
                                            )
Deputy Warden Schuster; et al.,             )
                                            )
          Defendants.                       )
                                            )
_____    )

    *Pro se* Plaintiff Michael S. McDonald, a prisoner in the custody of the Arizona Department of Corrections ("ADOC") filed this Section 1983 action, 42 U.S.C. § 1983, alleging that ADOC prison officials violated his Eighth Amendment rights by using excessive force and by exhibiting deliberate indifference to his medical needs.[1]  At issue are the following motions: Defendant's Motion to Dismiss due to Plaintiff's alleged failure to exhaust his administrative remedies prior to commencing this action (Doc. 66); Plaintiff's Motion to Strike certain statements in Defendant's Reply in Support of his Motion to Dismiss (Doc. 73); and Plaintiff's Motion to Strike the Declaration of Antonette Lee (Doc. 80).

---

[1]The only remaining Defendant is Edwin Lao, and the only remaining cause of action concerns Lau's use of allegedly excessive force against Plaintiff.

1   **I.      BACKGROUND**

2          The facts giving rise to Plaintiff's Complaint were fully set forth in the Court's

3   Order (Doc. 57) ruling on Defendant's Motion for Summary Judgment (Doc. 42) and need

4   not be reiterated here.  The germane facts for the pending motions concern ADOC's

5   inmate grievance procedure and Plaintiff's alleged attempts to comply with that

6   procedure:

7          An inmate who wishes to grieve the behavior of an ADOC staff member must

8   comply with the procedure set forth in Departmental Order ("D.O.") 802.12.[2]  Before

9   filing a formal grievance, the inmate must attempt to resolve his complaint informally by

10  submitting to his assigned C.O. III an Inmate Issue/Response Form within ten workdays

11  of the action that caused the complaint.  D.O. 802.08(1.1); 802.12(1.1.1).  The C.O. III

12  has a duty to investigate the complaint, and must notify the inmate by Issue/Response

13  Form within ten days of receiving the complaint whether it can be informally resolved.

14  D.O. 802.08(1.3.1-1.2.2).  If the inmate is unsatisfied with the resolution, or if there has

15  been no resolution, the inmate has ten days from his receipt of the Issue/Response form to

16  file a formal grievance.  D.O. 802.12(1.1.2).  Grievances are logged by the Grievance

17  Coordinator and forwarded to the Warden, Deputy Warden or Administrator, who have

18  thirty days to review the grievance and respond.  D.O. 802.12(1.1.5-1.1.6).  The inmate

19  may appeal to the ADOC Director, but must submit his appeal within ten days of

20  receiving the response to his grievance.  D.O. 802.12(1.2.1).

21         A grievance is considered exhausted when the ADOC Director denies the appeal.

22  D.O. 802.12(1.2.4).  If prison officials fail to respond to a grievance within the time

23  frames specified in the departmental order, the inmate is entitled to proceed to the next

24  level of review.  D.O. 802.07(1.2.4).

25

26

27         [2]ADOC Departmental Order 802 is attached to Defendant's Motion to Dismiss as

28  Attachment A.

1    Plaintiff alleges that he was injured when Defendant grabbed his testicles on April

2  13, 2002.  On May 15, 2002, well beyond the ten-day window for the filing of informal

3  complaints, Plaintiff submitted an inmate letter in an attempt to informally resolve, among

4  other issues, his complaint against Defendant.  (Def.'s Mot. to Dismiss, Ex. C.)  Plaintiff

5  alleges that the delay in filing his informal complaint is attributable to the fact that prison

6  officials did not supply him with the requisite forms.  (Compl. at 4, ¶ 5; Doc. 15, Ex. A.)

7    C.O. III Lee investigated the informal complaint, and advised Plaintiff on the

8  following day that the medical staff found "no evidence of injury" on his testicles.  (Def.'s

9  Mot. to Dismiss, Ex. D.)

10    Plaintiff then submitted a formal grievance on May 18, 2002.  (Def.'s Mot. to

11  Dismiss, Ex. E-1.)  That grievance was returned to Plaintiff as "unprocessed" because he

12  had not "documented [his] attempts to resolve the issue informally with [his] assigned CO

13  III,"[3] and because he was "past the time frames (10 calendar days) for filing a grievance."

14  (Def.'s Mot. to Dismiss, Ex. E.)  Plaintiff did not appeal this response.  He claims it is

15  because "[t]here is no appeal for an unprocessed grievance.  Without a tracking number,

16  no appeal is accepted."  (Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.)

17    On July 18, 2002, Plaintiff filed a complaint with this Court naming, among others,

18  Defendant Lao.  The Complaint alleges that Defendant is liable under 42 U.S.C. § 1983

19  for violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual

20  punishment.  On June 6, 2003, Defendant filed a motion to dismiss, asserting that

21  Plaintiff had failed to exhaust his administrative remedies prior to commencing this

22  action (Doc. 11.)   Plaintiff responded, and included an affidavit in which he stated that he

23  "requested inmate letter forms, grievance forms, and medical forms from CB-3

24

25

26

27    [3]This statement apparently refers to the fact that, according to Defendant, Plaintiff
failed to attach his rejected informal complaint to his grievance.  Plaintiff maintains that he
28  did attach his informal complaint to his grievance.

correctional staff and was denied said forms." (Doc. 15, Ex. A.)[4]  Plaintiff also maintains that he requested and was denied writing implements.  (Doc. 15, Ex. A.)  In lieu of a reply, Defendant withdrew his motion to dismiss but "reserve[d] the right to re-urge this basis for dismissal if discovery supports that Plaintiff failed to exhaust the prison grievance procedures.  At this time, however, Defendants are not able to evaluate and respond to the documents attached to Plaintiff's response to the Motion [to Dismiss]." (Doc. 19.)

On August 10, 2005, Defendant filed a second motion to dismiss on the issue of exhaustion (Doc. 66).  That motion, which is now pending, argues that Plaintiff failed to exhaust his administrative remedies because he did not appeal the denial of his grievance before filing his Complaint.  (Def.'s Mot. to Dismiss at 5.)  Plaintiff responded that any appeal would have necessarily been futile because "[t]here is no appeals process for an unprocessed grievance."  (Pl.'s Resp. to Mot. to Dismiss at 3.)  Defendant disagreed, replying that Plaintiff "could have resubmitted his grievance with the required information or he could have appealed the fact that his grievance returned unprocessed." (Def.'s Reply in Supp. of Mot. to Dismiss, at 2.)  Defendant also asserted that "McDonald could have obtained *some* remedy from the Warden or Deputy Warden and/or from the ADC Director by appealing the Grievance Coordinator's response."  (Def.'s Reply in Supp. of Mot. to Dismiss, at 2 n.3) (emphasis in original).

Plaintiff filed a motion to strike the statements in Defendant's reply that Plaintiff could have appealed the fact that his grievance was returned unprocessed.  (Doc. 73.) Defendant responded by voluntarily withdrawing that statement, as well as the statement that Plaintiff could have obtained some remedy by appealing the response.  Defendant stood by his argument that if Plaintiff had re-submitted his grievance with the informal complaint that he allegedly forgot to include with the initial submission, he could have obtained "some remedy."  Defendant also contends that if the re-submission included an

---

[4]Plaintiff made a similar contention in his Complaint.  (Compl. at 4, ¶ 5.)

explanation as to why his informal complaint was untimely, "the Grievance Coordinator would have further investigated his grievance." (Def.'s Resp. to Pl.'s Mot. to Strike Statements in Def.'s Reply at 2.) In support of that argument, Defendant attached to his response a declaration by Lee, Plaintiff's then-Grievance Coordinator and C.O. III who had returned his grievance as unprocessed. (Def.'s Resp. to Pl.'s Mot. to Strike Statements in Def.'s Reply, Ex. 2 ("Lee Declaration").) Lee states that if Plaintiff had re-submitted his grievance with both the informal complaint attached and an explanation as to why his informal complaint had not been submitted within ten days of the alleged assault, she "would have reviewed the grievance more carefully to determine if he had a valid reason for being out of time frames." (Lee Declaration at 2.)

Plaintiff replied, and also filed a motion to strike Lee's declaration. (Doc. 80.) It is not a true motion to strike, as it simply takes issue with the factual statements in Lee's declaration. For instance, Plaintiff contends that, despite Lee's statements to the contrary, he did attach his informal complaint to his grievance, and even if he had not, Lee herself had reviewed and signed the informal complaint two days before receiving the grievance. Plaintiff also points out that when Lee returned Plaintiff's grievance as unprocessed, she violated D.O. 802.12(1.1.4), which requires her to include with the denial "instruction for proper completion." According to Plaintiff, if Lee had really wanted Plaintiff to re-submit his grievance with the informal complaint attached, she should have said so when she returned the grievance to him.

## II.   LEGAL STANDARDS AND ANALYSIS

### A.   Plaintiff's Motions to Strike

Both motions to strike are denied. The motion to strike certain statements in Defendant's reply in support of his motion to dismiss simply expresses Plaintiff's disagreement with Defendant's arguments. That is not a proper basis for a motion to

strike.[5]  Similarly, the motion to strike Lee's declaration does nothing more than take issue with factual assertions in that declaration.  That is also not a proper basis for a motion to strike.

## B.    Timing

This lawsuit alleges that Plaintiff was a victim of Defendant's excessive force. Those allegations may or may not be true, but at a minimum, Plaintiff has been victimized by Defendant's dilatory litigation tactics.

This simple case was filed on July 18, 2002, over three and a half years ago.  The original scheduling order imposed a dispositive motion deadline of August 29, 2003. Defendant filed its first motion to dismiss on June 6, 2003 and also asked for, and received, a stay of discovery.  Defendant withdrew his motion to dismiss on July 10, 2003, a new scheduling order was entered on September 8, 2003, re-setting the dispositive motion deadline to May 14, 2004.  On May 14, 2004, Defendant asked that the dispositive motion deadline be pushed back one month, to June 14, 2004, and his request was granted.  On the last possible day to file a dispositive motion, Defendant did so, a motion for summary judgment.  Defendant asked for and received another extension, this time to file a reply in support of his motion for summary judgment.  The motion for summary judgment was denied in part, and yet again, Defendant asked for an extension, this time of one-hundred twenty days to file the joint pretrial statement.  That was not enough, and Defendant asked for, and received, a further sixty day extension.

Glaringly absent from this string of extensions is a request to file a dispositive motion after June 14, 2004.  Apparently, Defendant felt that he did not need permission to file such a motion, because he did file one without permission, about *fifteen months* after the dispositive motion deadline had passed.

---

[5]Federal Rule of Civil Procedure 12(f) authorizes courts to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter."

1    But it does not end there.  The Court is unaware of a case, and Defendant has not

2    pointed out any, where a defendant has been permitted to file a motion to dismiss on the

3    issue of exhaustion more than six months after a motion for summary judgment.  Courts

4    are generally hesitant to allow exhaustion issues to be raised even at the summary

5    judgment phase, but do so when there has not been an allegation of prejudice.  *See*

6    *Panaro v. City of N. Las Vegas,* 432 F.3d 949, 952 (9th Cir. 2005) (citations omitted)

7    (citing *Paine v. City of Lompoc,* 265 F.3d 975, 981 n.1 (9th Cir. 2001)). Here, Plaintiff

8    has correctly alleged that he has been prejudiced by this motion's tardiness.

9    Next, when Defendant learned of the basis for Plaintiff's opposition to the original

10   motion to dismiss, Defendant withdrew the motion because he needed to conduct more

11   discovery to adequately respond.  Defendant promised the Court that he would re-urge the

12   motion to dismiss only if discovery supported it.  Discovery did not support it, as

13   Defendant's pending motion to dismiss does not rely on any facts obtained in discovery.

14   Moreover, even if Defendant had somehow obtained an affidavit from the guards that

15   they had not withheld the grievance forms from Plaintiff, such an affidavit would have

16   been insufficient to overcome at that stage of the litigation Plaintiff's affidavit concerning

17   what the guards had allegedly done.  In other words, even at the time that Defendant

18   withdrew his motion, it appears impossible that discovery could have yielded evidence

19   that would have supported a dismissal for failure to exhaust.

20   The delay is also needless because there is no fathomable reason why, if Defendant

21   wished to press the exhaustion issue, he could not have at least attempted to do so in his

22   motion for summary judgment.  By that point, the discovery deadline had well passed.

23   And finally, as will be discussed below, the delay is especially needless because the

24   motion is baseless.

25   **C.    Exhaustion**

26   Section 1997e of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,

27   provides that, "No action shall be brought with respect to prison conditions under Section

28   1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

1   other correctional facility until such administrative remedies *as are available* are

2   exhausted."  (emphasis added).

3       "[A] remedy that prison officials prevent a prisoner from utilizing is not an

4   'available' remedy under § 1997e(a)."  *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001)

5   (citations and some internal punctuation omitted).  *See Mitchell v. Horn,* 318 F.3d 523,

6   529 (3d Cir. 2003) (denying motion to dismiss for failure to exhaust where prison

7   officials refused to provide inmate with necessary grievance forms, and as such, finding

8   that the inmate lacked "available" administrative remedies); *O'Connor v. Featherston,*

9   2002 WL 818085, at *1-2 (S.D.N.Y. April 29, 2002) (noting that "courts have held that

10  an inmate may nonetheless defeat a motion to dismiss even when the requirements of

11  administrative remedies have not technically been exhausted where . . . it is alleged that

12  corrections officers failed to file inmate's grievances or otherwise impeded or prevented

13  his efforts") (citations omitted).  *See, e.g., Johnson v. Wackenhut Corrs. Corp.,* 130

14  Fed.Appx. 947, 950 (10th Cir. 2005) (acknowledging that "courts have held that refusing

15  a prisoner grievance forms could raise an inference that the prisoner has exhausted

16  'available' administrative remedies"); *Vega v. U.S. Dep't of Justice,* 2005 WL 2931841, at

17  *2 (M.D. Pa. Nov. 4, 2005) (acknowledging the rule that where prison officials "mislead"

18  or "otherwise prevent" an inmate from filing a timely grievance, inmate may be justified

19  in "not complying with administrative procedural requirements") (citing *Brown v. Croak,*

20  312 F.3d 109, 112-13 (3d Cir. 2002)); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.

21  2002); *Foulk v. Charrier,* 262 F.3d 687 (8th Cir. 2001).  *Cf. Frank v. Days,* 322 F.3d 863,

22  867 (5th Cir. 2003) (holding that where injury prevented inmate from filing his grievance

23  in a timely manner, action could not be dismissed due to failure to exhaust, because, in

24  light of the inmate's injury, no remedies were "available" to him).

25       One way that prison officials can prevent an inmate from utilizing a remedy is by

26  denying him access to the requisite grievance forms until the window for filing

27  grievances has passed.  *Miller,* 247 F.3d at 739-40 (denying motion to dismiss for failure

28  to exhaust where inmate had attempted to obtain administrative forms for filing a

1   grievance but prison officials had refused to respond); *Mitchell,* 318 F.3d at 529 (citing
2   *Miller,* 247 F.3d at 740); *O'Connor,* 2002 WL 818085, at *1-2. *See also Johnson,* 130
3   Fed.Appx. at 950.

4          In those situations, an inmate's administrative remedies can be considered
5   exhausted "without his claims being denied at the highest level of administrative review
6   specified by the relevant prison policies." *Davis v. Arpaio,* 2006 WL 269964, at *2 (D.
7   Ariz. Jan. 31, 1996) (citing *Mitchell,* 318 F.3d at 529; *Miller,* 247 F.3d ay 740). *See also*
8   *Adkins v. Arpaio,* 2006 WL 269965, at *2 (D. Ariz. Jan. 31, 2006) (citations omitted);
9   *Cordova v. Arpaio,* 2005 WL 3560621, at *1 (D. Ariz. Dec. 29, 2005); *Neese v. Arpaio,*
10  397 F. Supp. 2d 1178, 1183 (D. Ariz. Nov. 9, 2005). *See, e.g., Henderson v. Macias,*
11  2005 WL 2709523, at *3 (E.D. Cal. Oct. 20, 2005) (holding that "exhaustion occurs when
12  prison officials fail to respond to a grievance within the policy time limits," and citing
13  supporting cases from the Third, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits)
14  (citations omitted); *Ellis v. Cambra,* 2005 WL 2105039, at *4 (E.D. Cal. Aug. 30, 2005)
15  (citations omitted); *Rowe v. Corcoran State Prison,* 2005 WL 1344379 (E.D. Cal. May
16  27, 2005).

17         Here, Plaintiff has alleged that despite numerous requests, prison officials refused
18  to provide him with the forms used to initiate the grievance process until the ten-day
19  window for timely filing such grievances had passed. (Compl. at 4, ¶ 5; Doc. 15, Ex. A;
20  Pl.'s Resp. to Def.'s Mot. to Dismiss at 3-4; Pl.'s Resp. to Def.'s Notice of Supplemental
21  Authority at 2; Pl.'s Mot. to Strike Decl. of Antonette Lee at 2.) Defendant provides no
22  evidence or argument to the contrary. Accordingly, because it is uncontested that prison
23  officials denied Plaintiff timely access to all available remedies, it cannot be said that he
24  failed to exhaust "available" remedies.

25         Defendant argues that even assuming prison officials impeded Plaintiff's access to
26  the grievance forms, Plaintiff's case should still be dismissed because he failed to appeal
27  the denial of his grievance. This argument is rejected in light of the above authority and
28  because even if Plaintiff had appealed, it was not possible for him to succeed, or for

1    prison officials to take any action on Plaintiff's grievance.  *See Booth v. Churner,* 532

2    U.S. 731, 736, 121 S. Ct. 1819, 1822-1823 n.1 (2001) (implicitly acknowledging that no

3    remedy is "available" where "the relevant administrative procedure lacks authority to

4    provide any relief or to take any action whatsoever in response to a complaint" because

5    "without the possibility of some relief, the administrative officers would presumably have

6    no authority to act on the subject of the complaint, leaving the inmate with nothing to

7    exhaust.");  *Brown v. Valoff,* 422 F.3d 926, 929 (9th Cir. 2005) ("[T]here can be no

8    'absence of exhaustion' unless *some* relief remains available") (citing *Brown v. Croak,* 312

9    F.3d 109, 112 (3d Cir. 2002)).  D.O. 802 is unequivocal on this point: "Failure to submit

10   [an informal complaint] within ten working days of the action that caused the complaint

11   *shall* result in the inmate's forfeiture of the opportunity to pursue a formal grievance

12   through the Department's Inmate Grievance system."  D.O. 802.08(1.1.1) (emphasis

13   added).  There is no provision in D.O. 802 that permits prison officials to consider a

14   grievance if the informal complaint is untimely.[6]  *See Brown,* 422 F.3d at 926 (noting that

15   "requiring *entirely* pointless exhaustion, when no possible relief is available, is more

16   likely to inflame than 'mollify passions'") (quoting *Booth,* 532 U.S. at 737, 121 S. Ct. at

17   1825) (emphasis in *Brown*).

18

19   _____

20        [6]Defendant disputes the fact that Plaintiff had no remedy available to him.  In his
     response to Plaintiff's motion to strike certain statements in Defendant's reply, Defendant
21   states that Plaintiff "could have obtained *some* remedy if he had resubmitted his grievance
     with the required information."  (Def.'s Resp. to Pl.'s Mot. to Strike Statements in Def.'s
22   Reply in Supp. of Mot. to Dismiss at 2.)  Not so.  Had Plaintiff submitted the "required
     information," which was apparently a copy of the informal complaint, that submission would
23   not have affected the second reason stated in the response for denying Plaintiff's grievance:
     the fact that his informal complaint was filed more than ten days after the alleged assault.
24   Even though Lee's declaration states that if Plaintiff had re-submitted his grievance with the
     informal complaint attached, she "would have investigated the matter further," that statement
25   is inconsistent with her duty to comply with D.O. 802, which does not provide any prison
     official with the authority to investigate untimely informal complaints.  Also, despite faulting
26   Plaintiff for not re-submitting his grievance, Lee violated D.O. 802.12(1.1.4), which requires
     her to return unprocessed grievances "with instruction for proper completion."
27

28

1    As a final note, the Court does not believe it is necessary to withhold ruling on this

2  motion until the United States Supreme Court renders its decision in the case of *Ngo v.*

3  *Woodford,* 2005 WL 3027720 (Nov. 14, 2005), which presents the question, answered in

4  the affirmative by the Ninth Circuit, 403 F.3d at 620, whether "a prisoner satisf[ies] the

5  Prison Litigation Reform Act's administrative exhaustion requirement by filing an

6  untimely or otherwise procedurally defective administrative appeal[.]" While the inmate

7  in *Ngo,* like Plaintiff, failed to file a timely informal complaint,[7] there is no allegation in

8  *Ngo* that the reason for the delay was attributable to factors outside of his control, such as

9  prison guards actively impeding inmate access to the grievance forms.  As such, the Court

10  believes that however the Supreme Court may rule in *Ngo,* it would not have an impact on

11  the present action.

12    **IT IS ORDERED** denying Defendant Lao's Motion to Dismiss (Doc. 66).

13    **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike certain

14  statements in Defendant's Reply in Support of his Motion to Dismiss (Doc. 73).

15    **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike the

16  Declaration of Antoinette Lee (Doc. 80).

17    **IT IS FURTHER ORDERED** that the Joint Proposed Pretrial Order is due in

18  thirty days.  No extensions will be given.  Defendant has the responsibility to

19  communicate with Plaintiff regarding the preparation of that Order.

20

21    DATED this 16th day of February, 2006.

22

23

24    _____

25    Susan R. Bolton
    United States District Judge

26

27    [7]While the untimely grievance in *Ngo* is referred to as an "appeal," it is procedurally
  and substantively equivalent to the informal complaint that ADOC inmates are required to

28  file in order to commence the inmate grievance process.